**Opinion issued December 31, 2024**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-23-00133-CR

———————————

**EARL DAVID WORDEN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 228th District Court**
**Harris County, Texas**
**Trial Court Case No. 1622305**

## MEMORANDUM OPINION

Appellant Earl David Worden was convicted by jury of sexual assault of a child between the ages of fourteen and seventeen years old. *See* TEX. PENAL CODE § 22.011. The trial court assessed appellant's punishment at twenty years'

confinement pursuant to an agreed punishment recommendation from the State. In eleven issues, appellant challenges the trial court's judgment. We affirm.

## Background

Because appellant does not challenge the sufficiency of the evidence supporting his conviction, only a brief recitation of facts is necessary to the disposition of this appeal. In 2017, Detective Joshua Reed of the Deer Park Police Department began investigating appellant for a matter unrelated to this case. During the investigation, Detective Reed interviewed many individuals, including the complainant, who is one of appellant's daughters.[1] Ultimately, appellant was charged with sexual assault of the complainant when she was between the ages of fourteen and seventeen years old.

The complainant is the oldest of appellant's six children with Sharon. At trial, Sharon testified that in January 1996, the family moved into a trailer home in the King's Row trailer home park in Houston, Texas. At that time, the complainant was fourteen years old.

After an unutilized room was converted to a fourth bedroom, the six children shared bedrooms in pairs while appellant and Sharon occupied the primary bedroom. When the complainant turned sixteen years old in February 1997, she began working

---

[1] All persons who were minors at the time of the offenses referenced in this opinion will be referred to by their initials, and their family members will be referred to by first name only. *See* TEX. R. APP. P. 9.10.

at a local Wal-Mart to help pay bills at home. As a result, she was given her own bedroom.

The complainant testified that once she began sleeping in her own room, she noticed that she would wake up with her clothes disheveled in ways that would not have happened normally while she was sleeping. She would also wake up to appellant opening her door, walking into her room, and touching her. If the complainant caught appellant, he would act as though he was just checking on her. Other times, the complainant awoke to find appellant's hands inside her underwear and inside her vagina. The complainant testified that this happened often until she moved out of the home in 1998.[2] To prevent the abuse, the complainant would wear extra clothing to bed, including jeans, belts, and jackets (instead of her pajamas). She also tried to avoid sleeping because if she was awake when appellant came into her room, he would leave.

According to Sharon, appellant became angry when the complainant began dating an older man who lived in the trailer home park. On one occasion, appellant and the complainant began arguing about her boyfriend. The complainant testified that appellant told her she could date the neighbor if she gave appellant her virginity first. When the complainant refused, appellant tried to force her to have sex with

_____

[2] The complainant could not give a definitive number of times the abuse occurred but stated that "if [appellant] was home, it was going to happen."

3

him. The complainant fought appellant off and grabbed a knife from the kitchen. She testified that she was angry and intended to kill appellant. When the complainant realized her siblings were watching the altercation, she took them into her room and closed the door until Sharon came home from work.

When Sharon arrived, the complainant was visibly upset and told Sharon that appellant held her down and touched her breasts. According to Sharon, the complainant did not disclose any of the prior abuse by appellant at that time.[3] Sharon sent the complainant to live with complainant's paternal grandmother, who lived in the same trailer home park. The complainant testified that she told her grandmother about what happened with appellant, but neither her grandmother nor Sharon called police. The complainant also testified that she disclosed the abuse to a "women's center" or agency for abuse victims when she was twenty-three years old, but they told her the abuse was too old.

During appellant's trial, the jury heard testimony from the complainant, Detective Reed; Sharon; the complainant's siblings, J.S., J.P, and E.W.; appellant's niece, Sonya; Sonya's ex-husband, Marc; and a child abuse expert. After considering the evidence, a jury found appellant guilty of sexual assault of a child between the ages of fourteen and seventeen years old. The trial court assessed appellant's

---

[3]     The complainant testified that after the altercation concerning the boyfriend, she told Sharon about the prior sexual assaults.

punishment at twenty years' confinement pursuant to an agreed punishment recommendation from the State.

Appellant moved for a new trial arguing that (1) there was jury misconduct due to outside influences; (2) the trial court's comment on the evidence during jury deliberations was improper; (3) the State injected racial and religious animus and stereotyping into the trial; (4) the State used false and misleading evidence that appellant was racist and a Mormon; and (5) he received ineffective assistance of counsel because his trial counsel failed to object to (a) the State's injection of racial animus into the trial, and (b) the State's closing argument that appellant was a racist and Mormon. Appellant supported his motion for new trial with affidavits. The trial court conducted a hearing and considered arguments from counsel before denying the motion. This appeal followed.

## Admissibility of Evidence

In three issues, appellant contends his conviction should be reversed because the trial court erred in admitting certain evidence during his trial. We review the trial court's decision to admit the evidence for an abuse of discretion. *Valadez v. State*, 663 S.W.3d 133, 143 (Tex. Crim. App. 2022) ("A trial court's decision to admit or exclude evidence is reviewed under an abuse of discretion standard."). A trial court abuses its discretion if its evidentiary ruling lies outside the zone of reasonable disagreement. *Id*. If the trial court's evidentiary ruling falls within the zone of

reasonable disagreement under any applicable legal theory, we will not intervene, even if the trial court gave an improper justification for its ruling. *De la Paz v. State*, 279 S.W.3d 336, 343–44 (Tex. Crim. App. 2009).

If the trial court abused its discretion in admitting the evidence, the error does not warrant reversal unless it affected appellant's substantial rights. TEX. R. APP. P. 44.2(b); *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018) (stating erroneous admission of evidence is non-constitutional error that requires reversal only if it affected appellant's substantial rights). An error affects appellant's substantial rights only when the error has "a substantial and injurious effect or influence in determining the jury's verdict." *Cook v. State*, 665 S.W.3d 595, 599 (Tex. Crim. App. 2023). After examining the record as a whole, if we have fair assurance that the error did not influence the jury—or had but a slight effect—we will not reverse appellant's conviction. *Gonzalez*, 544 S.W.3d at 373. In reaching this conclusion, we consider: (1) the character of the alleged error and how it might be considered in connection with other evidence, (2) the nature of the evidence supporting the verdict, (3) the existence and degree of additional evidence indicating guilt, and (4) whether the State emphasized the complained of error. *Id*.

## I. Admissibility of Appellant's Extraneous Conduct

In issues one and two, appellant argues the trial court erred in admitting testimony concerning his extraneous conduct against his other daughter, J.S. During

a break in the State's case, and outside the jury's presence, the trial court heard the

following testimony from the complainant and J.S. regarding appellant's conduct

against J.S.:

(1)     The complainant's testimony that she observed appellant grope J.S.'s breasts and put his hands up J.S.'s skirt, and that he made J.S. bend over while wearing shorts, skirts, or dresses, ostensibly to check their length;[4]

(2)     J.S.'s testimony that appellant stroked her leg during driving lessons;[5]

(3)     J.S.'s testimony that appellant walked in on her while she was "exposed" and using the restroom on two or three occasions, which made her so uncomfortable that she avoided using the restroom at home and even urinated in her closet to prevent it from happening; and

(4)     J.S.'s testimony concerning a conversation with appellant in Sharon's presence wherein appellant described how J.S. could masturbate with a glass Coke bottle.

During the hearing, appellant's counsel argued that the testimony was

inadmissible under Texas Rules of Evidence 404(b) and 403, but the trial court found

the testimony admissible to rebut defensive theories raised by counsel in opening

statement—namely, that it was impossible for appellant to commit the charged

offense given the number of occupants in the trailer and their sleeping arrangements

---

[4]     Complainant testified that appellant did similar things to her. When asked about these incidents during her own testimony, J.S. testified that she did not recall wearing skirts and did not recall her father groping her breasts.

[5]     Complainant similarly testified that appellant taught her to drive and that if she made a mistake, her punishment was to be groped. As a result, the complainant avoided driving with appellant or riding in a vehicle with him if possible.

(opportunity), and that the complainant fabricated her allegations against appellant so she could move out of the trailer and see her boyfriend without interference from her parents (fabrication).

## A. Applicable Law

Extraneous-offense evidence that has no relevance apart from character conformity is inadmissible. TEX. R. EVID. 404(b); *see Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011). However, extraneous-offense evidence is admissible under both Rules 404(b) and 403 if it satisfies a two-pronged test: (1) if it is relevant to a fact of consequence in the case aside from its tendency to show action in conformity with character, and (2) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *Page v. State*, 213 S.W.3d 332, 336 (Tex. Crim. App. 2006). "We defer to the trial court's determinations [on] whether extraneous evidence has relevance apart from character conformity and whether the probative value is substantially outweighed by the danger of unfair prejudice." *Hedrick v. State*, 473 S.W.3d 824, 829 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

Rule 404(b) authorizes the admission of extraneous-offense evidence if the evidence logically serves to make more or less probable an elemental fact, an evidentiary fact that inferentially leads to an elemental fact, or a defensive theory that undermines an elemental fact. *Martin v. State*, 173 S.W.3d 463, 466 (Tex. Crim.

8

App. 2005). The Court of Criminal Appeals has affirmed the admission of extraneous-offense evidence to rebut "lack of opportunity" and "impossibility" theories, *Wheeler v. State*, 67 S.W.3d 879, 887–88 (Tex. Crim. App. 2002), as well as fabrication theories. *Bass v. State*, 270 S.W.3d 557, 562–63 (Tex. Crim. App. 2008).

A defendant may open the door to the admission of extraneous-offense evidence by raising a defensive theory in an opening statement or during cross-examination of the State's witnesses. *Bass*, 270 S.W.3d at 563; *Powell v. State*, 63 S.W.3d 435, 439 (Tex. Crim. App. 2001). When defense counsel makes an opening statement immediately after the State's, the State may rely on the defensive opening statement as a preview of what evidence the defense intends to present and may rebut this anticipated defensive evidence during its case-in-chief, as opposed to waiting until rebuttal. *Bass*, 270 S.W.3d at 563 n.7.

Even if extraneous-offense evidence is admissible under Rule 404(b), a trial court still has discretion to exclude the evidence under Rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice. TEX. R. EVID. 403. Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. A Rule 403 inquiry generally requires a court to balance the following non-exclusive factors: "(1) how probative the evidence is[;] (2) the potential of the evidence to impress the jury in

some irrational, but nevertheless indelible way; (3) the time the proponent needs to develop the evidence; and (4) the proponent's need for the evidence." *Colone v. State*, 573 S.W.3d 249, 266 (Tex. Crim. App. 2019).

**B.      Rule 404(b) Analysis of Admissibility of Extraneous Conduct**

We begin by examining appellant's assertion that his counsel did not open the door to the admission of his extraneous conduct under Rule 404(b). For purposes of our analysis, we categorize appellant's extraneous conduct into two groups: extraneous conduct that occurred in the trailer and extraneous conduct that occurred outside the trailer.

**1.      Extraneous conduct in the trailer admissible to rebut defensive theory that appellant lacked opportunity to commit the charged offense.**

The decision by the Court of Criminal Appeals in *Powell* is instructive regarding the admission of appellant's extraneous conduct in the trailer. *Powell*, 63 S.W.3d at 436. The decision examined the inclusion of extraneous-offense evidence during a trial of alleged indecency with a child. *Id*. The State presented evidence that Powell sexually molested the complainant on numerous occasions in his living room while others were sleeping in the same room. In his opening statement—and through cross-examination of the victim—defense counsel asserted Powell had no opportunity to molest the victim with others present in the room. *Id*. at 436–37. The State rebutted that defensive theory with several witnesses who testified Powell

10

molested them under circumstances almost identical to those of the charged offense. *Id.* at 437. The Court of Criminal Appeals held that "the trial court could have reasonably decided that the extraneous offense evidence at issue had noncharacter conformity relevance where it rebutted [Powell's] defensive theory that he had no opportunity to commit the offense because he was never alone with the complainant." *Id.* at 438.

In *Wheeler*, the Court of Criminal Appeals reiterated that extraneous-offense evidence is admissible to rebut a defensive theory that a defendant did not have the opportunity to commit a sexual offense against a complainant while others are in the same room. *Wheeler*, 67 S.W.3d at 887 ("The defensive theories were essentially that appellant was never alone with S.E., and therefore lacked an opportunity to abuse her, or alternatively, that it would have been impossible for appellant to abuse her in a room full of people. . . . S.S.'s testimony served to rebut these defensive theories."); *see Abshire v. State*, 62 S.W.3d 857, 860–61 (Tex. App.—Texarkana 2001, pet. ref'd) (extraneous-offense evidence admissible in child sexual assault case where defensive theory was lack of opportunity to commit offense in house where no room was ever locked, and people were always in position to see what transpired).

Applying that logic to this case, the trial court could have reasonably concluded that appellant's counsel raised a "lack of opportunity" defense in his opening statement and cross-examination of the complainant, opening the door to

evidence concerning his sexual conduct towards J.S. in the trailer. *Wheeler*, 67 S.W.3d at 887–88; *Powell*, 63 S.W.3d at 438. During opening statements, counsel explained the defense's theories in the case:

> I'll give you three things, three reasons, the evidence will show why this allegation was not credible: *No. 1, it simply is not going to be possible.* You'll learn that there was a family of eight people that live in a trailer house in Houston. That's mom, dad, six children. These children are mostly old enough to know what's going on and see what's going on. You're also going to hear that [J.S.] and [B.S.] – [B.S.] is the complainant. [J.S.] is her sister, about a year younger than [B.S.]. They stay in the same room, the exact same room. It's a trailer house. It's not a big mansion.
>
> I think the evidence is going to show for most of the time they stayed in bunk beds right above each other. So this allegation we have today is not one allegation of sexual abuse. It's sexual abuse over a period of maybe two years, almost every night, hundreds of times; and *not one other person in the house ever noticed the abuse taking place*. It's not credible.

(emphasis added). During cross-examination, counsel elicited testimony from the complainant that the trailer had thin walls and felt cramped with eight occupants.

Appellant contends that even if his counsel opened the door to evidence concerning his extraneous conduct, the trial court still abused its discretion in admitting the evidence at issue because it was not sufficiently similar to the charged offense. However, appellant supports his contention with cases that discuss the degree of similarity required for extraneous conduct to counter "lack of intent," fabrication, or "frame-up" defenses. He provides no cases relevant to the degree of

similarity required to counter a defensive theory that he lacked the opportunity to sexually assault the complainant because people were always in the trailer.

Although some similarity is required, the degree of similarity required for the admission of extraneous conduct to prove appellant's opportunity to commit the charged offense is not as exacting as the degree of similarity required for the admission of extraneous conduct for other purposes, like proving identity or countering a fabrication defense. *Cf. Plante v. State*, 692 S.W.2d 487, 491–93 (Tex. Crim. App. 1985) (en banc) (relevance of extraneous offense depends on its similarity to charged offense, and degree of similarity required for admission of extraneous offense is based on purpose for which extraneous offense is introduced, and holding that degree of similarity required to show intent is less than what is required when extraneous offense is used to prove identity); *Dennis v. State*, 178 S.W.3d 172, 179 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (degree of similarity required for admission of extraneous offense to rebut fabrication theory is "not one of exacting sameness" as is required when extraneous offense is used to prove defendant's modus operandi).

We have discovered no cases specifically addressing the degree of similarity required to counter "lack of opportunity" defenses in child sexual assault cases, but the ultimate question here is whether there is a direct or logical connection between appellant's extraneous conduct against J.S. and his opportunity to sexually assault

13

the complainant in the trailer as alleged in the indictment. *Layton v. State*, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009) (when determining whether evidence is relevant, "[i]t is critical that there is a direct or logical connection between the actual evidence and the proposition sought to be proved"); *Fox v. State*, 283 S.W.3d 85, 92 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd) (extraneous conduct is admissible when "it tends in logic and common experience to serve some purpose other than character conformity to make the existence of a fact of any consequence more or less probable than it would be without the evidence").

Here, the trial court could have reasonably concluded that a logical connection existed between appellant's extraneous conduct against J.S. *in the trailer* and his opportunity to sexually assault the complainant *in the trailer*. Aside from its tendency to prove that appellant acted in conformity with his character, the complainant's testimony about appellant groping J.S.'s breasts and putting his hands up J.S.'s skirt in the trailer made appellant's opportunity to sexually assault the complainant in the trailer, despite the trailer's many occupants, more probable. The same logical connection existed between appellant's "lack of opportunity" defense and J.S.'s testimony about appellant teaching her how to masturbate and entering the bathroom multiple times while she was exposed, since the testimony concerned sexual misconduct against a child in the trailer. However, the trial court could not have reasonably concluded that a logical connection existed between appellant's

"lack of opportunity" defense and J.S.'s testimony about appellant stroking her leg during driving lessons, since that testimony concerned sexual misconduct against a child outside the trailer.

We conclude the trial court did not abuse its discretion in admitting testimony concerning appellant's extraneous conduct against J.S. in the trailer under Rule 404(b) as rebuttal evidence to appellant's "lack of opportunity" defense. However, the trial court did abuse its discretion in admitting J.S.'s testimony about appellant stroking her leg during driving lessons to the extent it was admitted for that purpose.

> **2. Extraneous conduct outside the trailer inadmissible to rebut defensive theory that complainant fabricated allegations against appellant.**

Because J.S.'s testimony about appellant stroking her leg during driving lessons was inadmissible to rebut appellant's "lack of opportunity" defense, we must determine whether the testimony was admissible to rebut appellant's fabrication defense. In *Bass*, the Court of Criminal Appeals held that a defendant's opening statement may open the door to the admission of extraneous-offense evidence to rebut a defensive theory that the complainant fabricated her allegations against the defendant. *Bass*, 270 S.W.3d at 563.

To be admissible for rebutting a fabrication defense, however, the extraneous offense or conduct "must be at least similar" to the charged offense. *See Wheeler*, 67 S.W.3d at 887 n.22; *Sandoval v. State*, 409 S.W.3d 259, 301 (Tex. App.—Austin

2013, no pet.); *Blackwell v. State*, 193 S.W.3d 1, 13 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd); *see also Dennis v. State*, 178 S.W.3d 172, 179 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (extraneous-offense evidence admitted to rebut defensive theory of frame-up need not be signature crime or nearly identical to charged offense; Rule 404(b) requires only similarity to charged offense).

Here, appellant was charged with penetrating the complainant's sexual organ with his finger. J.S.'s testimony that appellant touched her leg mid-thigh while teaching her to drive was not sufficiently similar to the charged offense to be admissible to rebut appellant's fabrication defense. *See Sandoval*, 409 S.W.3d at 301 (holding that "touching the butt over clothing" lacked sufficient similarity to "penile penetration of the sexual organ" and thus did not make it more or less probable that complainant lied); *see also Wheeler*, 67 S.W.3d at 887 n.22; *Blackwell*, 193 S.W.3d at 13. We conclude that while the testimony concerning appellant's extraneous conduct in the trailer was admissible to counter appellant's "lack of opportunity" defense, J.S.'s testimony about appellant stroking her leg during driving lessons rebutted neither appellant's "lack of opportunity" nor fabrication defenses and was therefore inadmissible under Rule 404(b).

## C. Rule 403 Analysis of Admissibility of Extraneous Conduct in the Trailer

Applying the Rule 403 analysis recited above, we hold the trial court did not abuse its discretion in finding the probative value of the testimony concerning

appellant's extraneous conduct in the trailer was not substantially outweighed by the danger of unfair prejudice. As we explained above, the testimony was probative to rebut appellant's "lack of opportunity" defense, as the testimony made appellant's opportunity to commit the charged offense more probable. The State spent inconsequential time developing the testimony—the reporter's record includes more than 300 pages of evidence, yet only eight pages of that evidence were dedicated to the testimony at issue. The State's need for the evidence was "considerable," given there were no eyewitnesses and no physical evidence to corroborate the complainant's testimony. *Caston v. State*, 549 S.W.3d 601, 612 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (State's need for extraneous-offense evidence was "considerable" where there were no eyewitnesses and no physical evidence to corroborate complainant's testimony in child sex abuse prosecution).

Although evidence that appellant sexually abused J.S. was prejudicial to his case, the record does not demonstrate the evidence was *unfairly* prejudicial. The danger of unfair prejudice was mitigated, to some degree, by the trial court providing oral and written instructions limiting the jury's consideration of the evidence. *Blackwell*, 193 S.W.3d at 15–16 (trial court's jury instructions limiting jury's consideration of extraneous-offense evidence to specific issues mitigated potential to impress jury in irrational, indelible way). During the State's case-in-chief, the trial court instructed the jury:

17

> You're about to hear matters regarding extraneous conduct. That's conduct outside the allegations in the indictment. I have a two-part instruction for you. Listen carefully. First, about extraneous conduct: The State has to prove the extraneous conduct to your satisfaction beyond a reasonable doubt. If they don't make that proof on extraneous conduct, simply disregard it. If they do make that proof, the conduct is not to be considered as direct evidence of the Defendant's character. It's only to be considered as to whether or not it serves to refute a claim of fabrication or perhaps lack of opportunity. It's called a limiting charge.
>
> When this case retires, you get this charge in writing again; but again on extraneous matters, you must be convinced beyond a reasonable doubt it did happen. If you're not so convinced, disregard it. If you are so convinced, then it is not direct evidence of the Defendant's character. It's only to refute, if it does refute, a claim of fabrication or perhaps lack of opportunity . . . .

Before releasing the jury for deliberations, the trial court explained the written instruction on the extraneous-conduct evidence as follows:

> You heard about extraneous matters in this case. That's not to show the character of the individual that they acted in accordance with the character. I'll tell you here it's only to aid you, if it does aid you, in proving either perhaps opportunity or lack of opportunity or to rebut a claim of fabrication. It's not character evidence nor direct evidence of guilt in this case.

Appellant's extraneous conduct towards J.S. was "no more serious than the allegations forming the basis for the indictment," mitigating the prejudicial effect of the evidence in conjunction with the trial court's limiting instruction. *See Caston*, 549 S.W.3d at 613 (affirming admissibility of testimony regarding extraneous offense, and noting evidence was prejudicial but not "unfairly prejudicial" because it "discussed actions that were no more serious than the allegations forming the basis

18

for the indictment"). Considering these factors, the trial court did not abuse its discretion in admitting testimony concerning appellant's extraneous conduct in the trailer over the defense's Rule 403 objection.

**D.      Harm Analysis of Admission of Extraneous Conduct Outside Trailer**

Because we find the trial court abused its discretion in admitting evidence concerning appellant's extraneous conduct outside the trailer, we must consider whether the error harmed appellant such that reversal is warranted. The record demonstrates the jury considered evidence that mitigated the prejudicial effect of J.S.'s testimony about appellant stroking her leg during driving lessons. Although J.S. testified that appellant stroked her leg in a way that made her feel "gross," she also testified that appellant never touched her breasts or between her legs. The jury also considered evidence that appellant taught his son to drive by tapping, not stroking, his leg, authorizing an inference by the jury that J.S. exaggerated appellant's actions while teaching her to drive, or that appellant's touching of his child's leg during driving lessons was not a sexual act.

Although the State referenced acts of sexual abuse that appellant committed against J.S. in its closing argument, the State did not specifically mention J.S.'s testimony about appellant stroking her leg during driving lessons. The defense specifically mentioned that testimony in its closing argument, however, reminding the jury that appellant's son learned how to drive the same way. J.S.'s testimony

19

about appellant stroking her leg was brief and the trial court instructed the jury to consider the testimony only for limited purposes, and only if the extraneous conduct was proven beyond a reasonable doubt. Absent evidence to the contrary, which the record does not reflect, we presume the jury followed the instructions provided by the trial court. *Archie v. State*, 340 S.W.3d 734, 741 (Tex. Crim. App. 2011) ("The law generally presumes that instructions to disregard and other cautionary instructions will be duly obeyed by the jury."). Having reviewed the record as a whole, we are convinced that J.S.'s testimony about appellant stroking her leg did not have a substantial and injurious effect on the jury's verdict. TEX. R. APP. P. 44.2(b). We overrule appellant's first and second issues.

## II. Admissibility of Detective Reed's Opinion on Complainant's Credibility

In issue four, appellant argues the trial court erred in admitting into evidence Detective Reed's opinion that the complainant was credible. Detective Reed contacted the complainant while investigating another case involving appellant and found the complainant's allegations that appellant abused her credible. During its direct examination, after the State asked Detective Reed to explain why he found the complainant credible and Detective Reed began to answer the State's follow-up question, appellant's counsel objected to the testimony regarding the complainant's credibility. The trial court overruled the objection but ordered the prosecutor to

"proceed with some caution." Detective Reed then testified that he found the complainant credible based on how she spoke to him. He testified that,

> [W]hen I talked to her, it was like initial fight or flight. It started off where it was some – like a normal conversation. Then it was kind of more somber the more we start to speak. Then as we start to speak, there's some emotion that's coming through. I initially make contact with her through a telephone call, but I can sense the emotions coming through the telephone call.

## A.    Error Preservation

The State contends appellant failed to preserve for appellate review any evidentiary error concerning the admission of Detective Reed's opinion. Rule of Appellate Procedure 33.1(a) provides that, as a prerequisite to presenting a complaint for appellate review, the appellate record must show that the complaint was made to the trial court by a timely request, objection, or motion stating the grounds for the ruling sought with sufficient specificity to make the trial court aware of the complaint. TEX. R. APP. P. 33.1(a)(1); *see Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009) ("To avoid forfeiting a complaint on appeal, the party must let the trial judge know what he wants, why he thinks he is entitled to it, and to do so clearly enough for the judge to understand him at a time when the judge is in the proper position to do something about it.") (internal quotations omitted).

The record demonstrates appellant's counsel did not object to the challenged testimony in a timely manner. "To be timely, a complaint must be made as soon as the grounds for complaint is apparent or should be apparent." *Montelongo v. State*,

21

623 S.W.3d 819, 822 (Tex. Crim. App. 2021). "If a defendant fails to object until after an objectionable question has been asked and answered, and he can show no legitimate reason to justify the delay, his objection is untimely, and any claim of error is forfeited." *Luna v. State*, 268 S.W.3d 594, 604 (Tex. Crim. App. 2008).

When the State asked Detective Reed, "In speaking with [the complainant], did you find her to be credible and reliable?" Detective Reed responded, "Yes, ma'am." Detective Reed was responding to the prosecutor's follow-up question, "Why is that?" when counsel finally objected, arguing Detective Reed's testimony was an improper opinion on the complainant's truthfulness. Although counsel failed to provide a reason for his late objection, we note that "the fast-paced nature of the examination, without more, is no legitimate reason to justify the delay in assertion of the objection." *Hollier v. State*, No. 14-99-01348-CR, 2001 WL 951014, at *4 (Tex. App.—Houston [14th Dist.] Aug. 23, 2001, pet. ref'd) (not designated for publication) (internal quotations omitted). Because appellant's counsel did not object to the testimony as soon as the grounds for objection became apparent, appellant failed to preserve this complaint for appellate review. *See* TEX. R. APP. P. 33.1(a)(1); *Montelongo*, 623 S.W.3d at 822; *Luna*, 268 S.W.3d at 604.

## B.     Harm Analysis

Even if this issue had been preserved for our review, and assuming there was error, the record demonstrates there was no harm. We reverse appellant's conviction

only if the error had a substantial and injurious effect or influence in determining the jury's verdict. *Gonzalez*, 544 S.W.3d at 373. Having examined the record, we have fair assurance that the admission of Detective Reed's testimony about the complainant's credibility had a slight—if any—influence on the jury's verdict. *Cook*, 665 S.W.3d at 599 (appellate courts "will not overturn a conviction if, after examining the record as a whole, [they] have fair assurance that the error did not influence the jury or did so only slightly").

Given there was no eyewitness or corroborating physical evidence, much of the evidence considered by the jury was focused on the primary issue in the trial: the complainant's credibility. During its opening and closing statements, the defense told the jury that the complainant's accusations against the appellant were "not credible." The defense supported its theory by poking holes in the complainant's story through cross-examination of the State's witnesses, as well as by offering witnesses who testified that the complainant is an untruthful person.

Although Detective Reed offered an opinion on the complainant's credibility, a reasonable juror would assume Detective Reed—the investigating officer who found probable cause to arrest appellant—believed the complainant's allegations. But even if the jury did not make that assumption, the trial court admitted unobjected-to-testimony from Sharon that she dismissed the complainant's allegations against appellant because "she wanted to pretend it wasn't happening."

One could argue Sharon's testimony bolstered the complainant's credibility as much, if not more, than Detective Reed's opinion. *Anderson v. State*, 717 S.W.2d 622, 628 (Tex. Crim. App. 1986) (en banc) ("Inadmissible evidence can be rendered harmless if other evidence at trial is admitted without objection and it proves the same fact that the inadmissible evidence sought to prove.").

The State spent inconsequential time developing Detective Reed's opinion; again, the reporter's record includes more than 300 pages of evidence and only one page was dedicated to Detective Reed's opinion. The State also did not specifically mention Detective Reed's opinion in its closing statement. The jury charge instructed the jury that it was the exclusive judge "of the credibility of the witnesses and the weight to be given their testimony." The trial court explained that instruction to the jury by saying, as the exclusive judge of witness credibility, "You decide who you believe and what to believe." Moreover, the State offered the complainant as a witness, so the jury was able to independently assess her credibility. Accordingly, we have fair assurance that the trial court's alleged error in admitting Detective's Reed's opinion either did not influence the jury or had but a slight effect. TEX. R. APP. P. 44.2(b); *See Cook*, 665 S.W.3d at 599–601.

We overrule appellant's fourth issue.

**Denial of Motion for New Trial**

In four issues, appellant argues the trial court abused its discretion in denying his motion for new trial.[6] We review the trial court's denial of the motion for an abuse of discretion. *Najar v. State*, 618 S.W.3d 366, 371 (Tex. Crim. App. 2021). A trial court may consider evidence, including affidavits or live testimony, supporting or opposing a motion for new trial. *See* TEX. R. APP. P. 21.7. "We view the evidence in the light most favorable to the trial judge's ruling and presume that all reasonable factual findings that could have been made against the losing party were made against that losing party." *Colyer v. State*, 428 S.W.3d 117, 122 (Tex. Crim. App. 2014). "[T]he trial court is the exclusive judge of the credibility of the evidence, regardless of whether the evidence is controverted, and its ruling will be reversed only for an abuse of discretion, that is, if it is arbitrary or unsupported by any reasonable view of the evidence." *Naja*r, 618 S.W.3d at 372; *see Okonkwo v. State*, 398 S.W.3d 689, 694 (Tex. Crim. App. 2013) ("In the absence of express findings, as here, we presume that the trial court made all findings, express and implied, in favor of the prevailing party," including implied finding that affidavit supporting motion for new trial lacked credibility).

---

[6] In issue ten, appellant complains that his counsel provided ineffective assistance by failing to raise timely objections to the admission of evidence concerning race and religion. This complaint was also included in his motion for new trial. Although this specific claim of ineffective assistance was noted in the motion for new trial, we will address it in the "Ineffective Assistance of Counsel" section of our opinion.

## I. Trial Court Judge's Comment During Jury Deliberations

In issues seven and eight, appellant argues on both statutory and constitutional grounds that the trial court judge's comment during jury deliberations that, "We have encapsulated 25 years of a dysfunctional family at best," was prejudicial and denied him due process. *See* TEX. CODE CRIM. PROC. art. 38.05 (prohibiting trial court judge from commenting on weight of evidence in criminal proceedings or otherwise divulging to jury his opinion of case); *see also* U.S. CONST. amends. V, XIV (guaranteeing criminal defendants a fair and impartial trial consistent with due process of law).[7] Appellant made a similar argument in his motion for new trial, which the trial court denied.

At the end of the first day of deliberations, the jury foreman informed the trial court judge that the jurors were split on the question of appellant's guilt. When the trial court judge asked each juror if further deliberations would assist them in

---

[7] In its brief, the State challenges whether appellant's complaint about the trial court judge's comment on constitutional grounds was preserved. The record demonstrates appellant did not raise a complaint about the comment until his motion for new trial. Relying on *Proenza v. State*, 541 S.W.3d 786 (Tex. Crim. App. 2017), however, appellant contends no objection was necessary to raise his complaint about the comment on both statutory and constitutional grounds. In *Proenza*, the Court of Criminal Appeals held that complaints about judicial comments raised under Article 38.05 are not forfeitable by inaction. 541 S.W.3d at 798–801. However, the court in *Proenza* was concerned with a judicial comment that allegedly violated Article 38.05 and not constitutional due process. "Regardless, we presume without deciding that appellant's [due process complaint] did not need to be preserved in the trial court to be raised on appeal." *Gibson v. State*, No. 14-19-00827-CR, 2020 WL 7626406, at *5 (Tex. App.—Houston [14th Dist.] Dec. 22, 2020, pet. ref'd) (mem. op., not designated for publication).

26

reaching a verdict, some jurors responded that it would, while some said it would not. The judge then instructed the jurors to return in the morning for further deliberations, specifically stating:

> We have encapsulated 25 years of a dysfunctional family at best into a day and a half of testimony and half a day of deliberation. I'm going to ask[] you for some more service. What I'd like to do is start back tomorrow morning at 9:00 o'clock. And then if you find yourself – we call it a loggerhead – you just can't agree on anything final. If you reach that point tomorrow whether it's 9:01 or 5:30 in the afternoon, if you reach some final process where we just cannot agree upon a final verdict, you reach out to me and tell me "We've had it. We can't go forward any further."

We first address appellant's challenge to the judge's comment on statutory grounds. Article 38.05 of the Texas Code of Criminal Procedure "prohibits the trial judge from commenting on the weight of the evidence in criminal proceedings or otherwise divulging to the jury [his] opinion of the case." *Proenza v. State*, 541 S.W.3d 786, 791 (Tex. Crim. App. 2017). It provides:

> In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its bearing in the case, but shall simply decide whether or not it is admissible; nor shall he, at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case.

TEX. CODE CRIM. PROC. art. 38.05. When reviewing a claimed violation of Article 38.05, we first determine whether the judge's comment was, in fact, improper. *Moore v. State*, 624 S.W.3d 676, 681 (Tex. App.—Houston [14th Dist.] 2021, pet. ref'd). A judge improperly comments on the weight of the evidence if he makes a

27

statement that (1) implies approval of the State's argument, (2) indicates any disbelief in the defense's position, or (3) diminishes the credibility of the defense's approach to the case. *Id*. at 681–82. If we conclude the judge's comment was improper, we must then decide the materiality of the comment. *Id*. at 681. "A comment is material if the jury was considering the same issue." *Id*. at 682. If the comment was both improper and material, we address harm, using the standard for non-constitutional harm set forth in Rule of Appellate Procedure 44.2(b). TEX. R. APP. P. 44.2(b); *Proenza*, 541 S.W.3d at 801.

Here, the judge did not simply inform the jury, "We have encapsulated 25 years of a dysfunctional family at best." He informed the jury, "We have encapsulated 25 years of a dysfunctional family at best into a day and a half of testimony and half a day of deliberation. I'm going to ask[] you for some more service." To put the judge's comment in perspective, we note that, before retiring for the day, the jury sent several notes to the judge requesting transcripts of testimony from family members, including Sharon and J.S.'s accounts of the events on the day the complainant threatened to kill appellant with a knife, and the complainant and Sonya's accounts of what the complainant told Sonya regarding the sexual abuse. This indicates the jurors were concerned about what the family members knew about the complainant's allegations, especially what the complainant had shared with her family members.

28

Although the judge made a comment on the evidence, he did not make a comment on the *weight* of the evidence or reflect any opinion on the merits of the State's case or appellant's defensive theories. When considered in context, the judge's comment appears to be an inartful attempt at acknowledging the difficulty the jury faced in reaching a consensus on appellant's guilt in a short amount of time and his urging the jurors to deliberate further before giving up on reaching a verdict. The jury was tasked with weighing conflicting testimony from estranged family members, whose childhood consisted of moving from place to place and relying on others for food. Like the State argued at the hearing on appellant's motion for new trial, "no juror went into that deliberation room thinking that this family was normal." Appellant's counsel acknowledged as much in his closing statement by arguing that, due to her upbringing, the complainant had many reasons to dislike appellant.

To be sure, the jury was not deliberating whether appellant and the complainant had a dysfunctional family; the jury was deliberating whether the appellant sexually assaulted the complainant. Thus, even if we concluded the judge's comment was improper, we would still conclude that appellant's statutory right was not violated because the judge's comment was not material. Furthermore, we note that even if we concluded appellant's statutory right was violated, the violation would not warrant reversal because appellant cannot show the judge's comment was

reasonably calculated to benefit the State or prejudice his rights. *Moore*, 624 S.W.3d at 682 ("To constitute reversible error under article 38.05, the trial court's improper comments must be reasonably calculated to benefit the State or prejudice the defendant's rights.").

Appellant also challenges the judge's comment on constitutional grounds. Due process requires a neutral and detached hearing body or officer. *Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973)). To reverse appellant's conviction on constitutional grounds, we must find that (1) judicial impropriety was committed, and (2) appellant was probably prejudiced by the judicial impropriety. *Dockstader v. State*, 233 S.W.3d 98, 108 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd). Absent a clear showing to the contrary, we presume that the trial court judge was neutral, detached, and unbiased in all phases of the trial. *Brumit,* 206 S.W.3d at 645. Thus, for the same reasons we rejected appellant's claim that the judge's comment violated Article 38.05, we also reject his claim that the comment denied him constitutional due process. We overrule appellant's seventh and eighth issues.

## II.  Admission of Evidence Concerning Race and Religion

In issue nine, appellant contends the trial court abused its discretion in denying his motion for new trial because the State injected racial and religious animus and stereotyping into the trial, violating his First Amendment rights.

During the trial, the State asked the complainant why Sharon initially did not move into the trailer with the family. The complainant responded that appellant and Sharon were trying to hide the fact that Sharon was pregnant by someone other than appellant. The complainant explained that her parents "didn't want us to know that they were giving it up for adoption, and my father wouldn't raise it because it was half black." Appellant's counsel did not object to this testimony. The State mentioned this testimony in its closing argument, noting that Sharon "hadn't been in their lives for a while because she was pregnant. She had given birth to a biracial child that [appellant] wouldn't allow to move back into the trailer. So that child had to be put up for adoption." Appellant's counsel did not object to the State's argument.

The complainant also testified that when Sharon became pregnant, she and her siblings moved into a house with appellant and his then-girlfriend. She testified appellant's girlfriend practiced Mormonism and wanted the family to convert. When the State asked the complainant to clarify who wanted her to convert to Mormonism, appellant's counsel objected, stating, "Judge, I'll object to the relevance of the religion of the family. I think that's not admissible under the evidence." The trial court sustained the objection. The State then laid a foundation for the testimony, eliciting testimony from the complainant about how the appellant started being "creepy" with her when they moved into the girlfriend's house. The prosecutor asked

31

the complainant, "Did he make any comments that were concerning?" The complainant responded, "He was trying to get me to convert to Mormonism." Appellant's counsel objected, stating, "I'll object to the religious issues again." The trial court overruled the objection, and the complainant testified that appellant "was trying to convince me with arguments that fathers can marry their daughters in Mormonism." The State mentioned the complainant's testimony in its closing argument, stating, "Why did [appellant] want [the complainant] to convert? So that a father could marry his daughters." Appellant's counsel did not object to the State's argument.

We conclude appellant failed to preserve for appellate review his First Amendment challenge to the admission of this evidence. Rule 33.1 applies equally to alleged violations of constitutional rights and evidentiary errors. *Darcy v. State*, 488 S.W.3d 325, 329–30 (Tex. Crim. App. 2016) (concluding that because "errors in the admission of evidence [are] subject to procedural default, regardless of the constitutional right involved," such errors must be preserved to prevent "forfeit[ure] by inaction"). Moreover, appellant's complaint on appeal must comport with the specific complaint timely lodged in the trial court. *Penton v. State*, 489 S.W.3d 578, 580 (Tex. App.–Houston [14th Dist.] 2016, pet. ref'd); *see Pena*, 285 S.W.3d at 464. Appellant must have conveyed to the trial court the particular complaint raised on

appeal, including the precise and proper application of law as well as the underlying rationale. *Penton*, 489 S.W.3d at 580.

Here, the record demonstrates appellant raised his First Amendment complaint regarding the testimony about Sharon being pregnant with a biracial child for the first time in his motion for new trial. "A defendant may not raise a matter for the first time in a motion for new trial if he had the opportunity to raise it at trial." *Colone*, 573 S.W.3d at 260; *see Alexander v. State*, 137 S.W.3d 127, 131 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd). Appellant's counsel objected neither to the testimony concerning race nor the State's comment about race during its closing argument. Therefore, appellant failed to preserve his First Amendment challenge to the testimony for appellate review. *See* TEX. R. APP. P. 33.1(a)(1).

The record further demonstrates appellant raised his First Amendment complaint regarding the testimony about his wanting the complainant to convert to Mormonism for the first time in his motion for new trial. The record shows appellant's counsel objected to this testimony during the trial, but on the grounds that the family's religious practices were irrelevant to the trial issues, not on the grounds that admitting the evidence violated appellant's First Amendment rights. Appellant's counsel also made no objection to the State's closing argument regarding the testimony. Because appellant's First Amendment complaint on appeal does not comport with his counsel's evidentiary complaint to the trial court,

33

appellant failed to preserve his First Amendment complaint for appellate review. *Pena*, 285 S.W.3d at 464 ("Whether a party's particular complaint is preserved depends on whether the complaint on appeal comports with the complaint made at trial."). We overrule appellant's ninth issue.

## III.    Jury Misconduct Due to Outside Influences

In issue five, appellant argues the trial court abused its discretion in denying his motion for new trial because outside influences improperly impacted the jury's verdict against him. He submitted several affidavits from non-jurors in support of his motion. After considering the affidavits and arguments from counsel, the trial court denied appellant's motion. The judge stated, among other things, that:

> [T]here were numerous attempts to influence and intimidate a jury that I believe were absolutely unsuccessful. This was the hardest working, most diligent jury panel I've had in 37 years. They were attentive and intelligent. Wouldn't prove that – I can't bring it in here. It's not part of the trial.
>
> At the end of the case, after [appellant] agreed to sentencing, I went back in the back to tell the jury the outcome of sentencing because they thought they were going to do sentencing. When I walked in the jury room, I was stupefied to the point I actually took a video of what they did. My first video in my 37 years down here of jury work product. They had papered the room with giant pieces of white paper, different colors, charts, diagrams, a list of witnesses and dates, to show the diligence they did over multiple hours of deliberation.

The judge concluded, "I don't think for a second that race animus or certain Mormonism had anything to do with their judgment," and "I have no belief for a

34

second that any outside influence had anything to do with the ultimate verdict of guilty against [appellant]."

When a defendant moves for a new trial based on jury misconduct, the defendant must establish not only that jury misconduct occurred, but also that it was material and probably caused injury. *Ryser v. State*, 453 S.W.3d 17, 39 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). An "outside influence" is something originating from a source outside of the jury room and other than from the jurors themselves. *McQuarrie v. State*, 380 S.W.3d 145, 154 (Tex. Crim. App. 2012). The mere presence of outside influences does not warrant automatic reversal. *Ryser*, 453 S.W.3d at 41. Rather, an "outside influence is problematic only if it has the effect of *improperly* affecting a jury's verdict in a particular manner for or against a particular party." *Becerra v. State*, 685 S.W.3d 120, 140 (Tex. Crim. App. 2024) (citing *Colyer*, 428 S.W.3d at 129). "[C]ourts conduct an objective analysis to determine whether there is a reasonable possibility that the outside influence had a prejudicial effect on the hypothetical average juror[.]" *Id.*

The Court of Criminal Appeals has explained that an outside influence includes a juror's "internet research" regarding "the effects of date rape drugs" that the juror performed "at her home during an overnight break" when the juror relayed that information to the other jurors. *McQuarrie*, 380 S.W.3d at 148, 154. It also explained that an outside influence includes "factual or legal information conveyed

to the jurors by a bailiff or some other unauthorized person who intends to affect the deliberations." *Colyer*, 428 S.W.3d at 125. But an outside influence does not include "influences or information that are unrelated to the trial issues." *Id*. at 127.

In his motion, appellant claimed "repeated outside influences on the jury and jury misconduct – including: an attendee (perceived to be associated with [appellant]) following jurors to their cars; communications and attempts to communicate to jurors, including individuals against [appellant] shouting that other attendees were supporting a rapist and sex offender within earshot of the jury; and the Court impermissibly commenting on the weight of the evidence in that the jury heard about '25 years of this dysfunctional family in two days' and repeatedly emphasizing to the jury that there was a lot of crazy stuff on the internet about [appellant] if they were to Google him[.]"

Contrary to appellant's arguments, the record supports the judge's decision to reject allegations that outside influences improperly affected the jury's verdict. Appellant submitted affidavits stating that, after the first day of deliberations, jurors were followed to their cars by a man named John Gray, who allegedly supported appellant. In his affidavit, Gray stated that he "attended the trial to report and make a news story about the evidence presented - and to make up my mind about the allegations made against [appellant]." Gray did not indicate he attended the trial to

36

assist either the State or appellant in achieving a particular result. He described his encounter with jurors as follows:

> Following the jury being excused for the day, I exited the courthouse to walk to my car. As I was walking outside the courthouse, I encountered a portion of the jury walking out the door of the courthouse. I observed those jurors looking at me. I was carrying my camera equipment, which includes my cell phone attached to a gimbal, which also has lights and a microphone attached. I walked right behind the jurors, within just a couple of feet, and at some point, even walked within their group. I walked one full block with those jurors. I realized I was walking the wrong direction to my car, and I turned to walk back towards the courthouse. While walking back, I encountered a second group of jurors. I knew both groups were jurors because I recognized them from sitting in the trial. I walked through this second group of jurors. I made eye contact with those jurors. I proceeded to my car and went home.

In denying appellant's motion, the judge found that Gray may have been attempting to intimidate the jury but also found that Gray's attempts to do so were unsuccessful. The judge discussed the incident involving Gray with jurors on the second day of deliberations, but the record lacks evidence that the incident influenced jury deliberations. Instead, the record demonstrates that on the second and last day of deliberations, the jurors spent hours carefully reviewing all the evidence before arriving at a verdict. The jury even sent notes to the judge requesting transcripts of certain testimony.

Appellant submitted an affidavit stating that a trial attendee, who was reportedly opposed to appellant, conversed with jurors outside the courtroom after the first day of deliberations. However, the affiant did not know what the trial

attendee and jurors were conversing about, and the judge stated at the hearing that no one mentioned this incident to him. Appellant also submitted affidavits stating that, during a break in the trial, three trial attendees were arguing in the hallway about the case, with one attendee accusing another of "supporting a rapist and sex offender." The argument allegedly took place near the jury room and was loud enough to catch the bailiff's attention. However, the judge found that while the jurors may have overheard yelling and screaming in the hallway, they did not hear any statements about the case that improperly affected their verdict in any particular way.

Appellant's counsel provided an affidavit stating that, due to the public interest in the trial and the presence of numerous attendees, the jury's verdict was influenced by the fact that they were "taken out of the courtroom through the same doors used by the public." Yet, the record reflects the judge went to "extraordinary lengths to isolate [the] jury in a very difficult public space" and that jurors were escorted out the public entrances. Therefore, the judge could have disbelieved counsel's claim that the jury's verdict was improperly affected by the public interest in the trial and the presence of numerous attendees. Likewise, the judge could have disbelieved a suggestion made by counsel that the judge's statement to jurors after the first day of deliberations—that "if they Googled about the case, there would be 'crazy stuff' out there"—improperly affected the jury's verdict in any particular way. The judge instructed the jury not to use any outside information, including the

Internet, in reaching a verdict, and appellant provided no evidence that any juror shared information about the case obtained from the Internet with other jurors.

In issue six, appellant claims the judge abused his discretion in denying his motion for new trial because the judge considered evidence that should have been excluded by Texas Rule of Evidence 606(b). Rule 606(b) provides:

**(b) During an Inquiry Into the Validity of a Verdict or Indictment.**

**(1) Prohibited Testimony or Other Evidence.** During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.

**(2) Exceptions.** A juror may testify about whether:

(A) extraneous prejudicial information was improperly brought to the jury's attention;

(B) an outside influence was improperly brought to bear on any juror; or

(C) a mistake was made in entering the verdict on the verdict form.

Tex. R. Evid. 606(b).

Appellant claims that the judge violated Rule 606(b) by considering observations of the jury room made after the trial, including the jurors' work product and how the jury "papered the room with giant pieces of white paper, different

39

colors, charts, diagrams, a list of witnesses and dates." First, when the judge announced his ruling, stating that he made those observations, appellant's counsel made no objection on the grounds that the judge violated Rule 606(b) by considering his jury room observations. Therefore, appellant failed to preserve his Rule 606(b) complaint for appellant review. *See* TEX. R. APP. P. 33.1(a)(1). Second, Rule 606(b) prohibits juror testimony or affidavits regarding jury deliberations, juror mental processes, or how an improper influence affected jurors. TEX. R. EVID. 606(b); *Colyer*, 428 S.W.3d at 123–24. It does not prohibit a trial court judge from considering his own observations of the jury room after the trial in deciding whether jury misconduct occurred. *See* TEX. R. EVID. 606(b). We hold the trial court did not abuse its discretion in denying appellant's motion for new trial and overrule appellant's fifth and sixth issues.

**Ineffective Assistance of Counsel**

In issues three and ten, appellant argues we should reverse his conviction because his counsel's performance was deficient. He argues his counsel's performance was deficient for two reasons: (1) counsel improperly opened the door to otherwise inadmissible extraneous conduct evidence, and (2) counsel failed to object to the admission of evidence concerning race and religion that violated his First Amendment rights.

## I.     Standard of Review and Applicable Law

The Sixth Amendment of the United States Constitution and the Texas Constitution guarantee a criminal defendant the right to reasonably effective assistance of counsel. U.S. CONST. amend. VI; TEX. CONST. art. 1, § 10; *see Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). A criminal defendant's right to effective assistance of counsel requires objectively reasonable representation, not errorless performance. *Lopez*, 343 S.W.3d at 142 (citing *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006)). To establish trial counsel provided ineffective assistance, appellant must demonstrate by a preponderance of the evidence that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687; *Lopez*, 343 S.W.3d at 142.

Counsel's performance is considered deficient when it falls below an objective standard of reasonableness, but an appellant must overcome the strong presumption that counsel's performance fell within the wide range of reasonable professional assistance. *Prine v. State*, 537 S.W.3d 113, 117 (Tex. Crim. App. 2017). "It is not sufficient that the appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence. Rather, the record must affirmatively demonstrate trial counsel's alleged ineffectiveness." *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007).

Generally, the record on direct appeal is undeveloped regarding the motive behind counsel's actions and thus inadequate to prove a claim of ineffective assistance. *See Menefield v. State*, 363 S.W.3d 591, 592–93 (Tex. Crim. App. 2012); *see also Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) ("A substantial risk of failure accompanies an appellant's claim of ineffective assistance of counsel on direct appeal."). The Court of Criminal Appeals has repeatedly stated that trial counsel "should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Menefield*, 363 S.W.3d at 593 (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)). When counsel is not provided an opportunity to explain his conduct, we will not find counsel's performance deficient unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Id*.

**II. Analysis**

As we concluded earlier, the trial court did not abuse its discretion in finding counsel opened the door to the extraneous conduct evidence by raising a "lack of opportunity" defensive theory. In his affidavit submitted with appellant's motion for new trial, appellant's counsel explained why he opened the door to evidence concerning appellant's extraneous conduct. He stated,

> The evidence in this case was very thin. There was no physical evidence and the case came down to [the complainant's] credibility. I believed that her story was not credible because it changed, not only prior to trial, but also during her testimony before the jury. Also, it did not seem possible for [appellant] to have snuck into her room each night for two years in a trailer house with seven people without anyone noticing anything. Our defense included trying to keep out extraneous bad act evidence. However, the trial [j]udge found that I had opened the door to some prior bad act evidence which came in through [J.S.].

During the trial, after learning he had opened the door to the evidence, counsel said, "First of all, this is necessary for the record. I've not intended to open the door to the extent I have, and it's harmful to my client. I'll admit that later."

Although counsel did not intend to open the door to the evidence, counsel believed that pursuing the defensive theory which opened the door to the evidence was a reasonable trial strategy. He expressed that, given the lack of eyewitnesses and corroborating physical evidence, the complainant's credibility was the main issue in the trial, so he had no choice but to challenge her credibility and the possibility that appellant could commit the charged offense in a crowded trailer.

Texas courts have repeatedly held that opening statements or witness questioning that opens the door to evidence concerning a defendant's extraneous conduct is not ineffective assistance where counsel's actions were consistent with a reasonable trial strategy. *See, e.g., Howard v. State*, 239 S.W.3d 359, 367–68 (Tex. App.—San Antonio 2007, pet. ref'd) (mem. op.) (concluding that counsel opening door to extraneous bad acts by raising defensive theory in opening statement was consistent with reasonable trial strategy and not ineffective assistance); *Josey v. State*, 97 S.W.3d 687, 696 (Tex. App.—Texarkana 2003, no pet.) (counsel's questioning that opened the door to forensic interviewer's responses regarding other alleged sexual contact between victim and defendant was not ineffective assistance but instead "represent[ed] an attempt to undermine the credibility" of either interviewer or victim); *Bass v. State*, 713 S.W.2d 782, 785 (Tex. App.—Houston [14th Dist.] 1986, no pet.) (concluding that counsel's putting appellant on stand and subjecting her to cross-examination regarding her prior offenses to establish her lack of intent—her only real defense—was reasonable trial strategy).

After examining the whole record, we cannot conclude that counsel's decision to pursue the defensive theory which opened the door to the challenged testimony constituted deficient performance. The jury could only convict appellant if it found the complainant's allegations credible. Thus, to effectively defend appellant, counsel needed to challenge the complainant's credibility and emphasize any weaknesses in

her story. The complainant herself admitted that her family lived in a trailer that felt cramped with eight occupants. Therefore, it was sound trial strategy for counsel to pursue a defense that raised doubts about how appellant could have assaulted the complainant in such a confined space over an extended period.

Counsel also stated that he did not object to the testimony regarding Sharon's pregnancy with a biracial child because the claim had not been raised prior to the trial and "caught [him] off guard." But we cannot hold counsel's performance deficient simply because he did not object to the admission of this testimony on evidentiary or constitutional grounds. "Isolated instances in the record reflecting errors of omission or commission do not render counsel's performance ineffective, nor can ineffective assistance of counsel be established by isolating one portion of trial counsel's performance for examination." *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). Instead, counsel's performance is judged by the totality of the representation. *Id.*

The record demonstrates that after missing the objection, counsel took steps to lessen the prejudicial effect of the testimony. During cross-examination, counsel asked the complainant to clarify why Sharon did not initially move into the trailer. The complainant testified that Sharon did not move into the trailer because she was pregnant by someone other than appellant, rather than because she was pregnant with a biracial child. Given the overall representation provided by counsel, particularly

his efforts to mitigate the prejudicial effect of the unchallenged testimony instead of drawing attention to it with an objection, we cannot say counsel's performance fell below an objective standard of reasonableness.

Appellant further argues his counsel was ineffective for failing to properly object to the complainant's testimony (and the State's argument) about him wanting the complainant to convert to Mormonism. He claimed the testimony indicated he "was a Mormon seeking to marry his own daughter," which violated his "right to the free exercise of his religion, and to associate with members of a religion." However, the record demonstrates counsel objected to the testimony on relevancy grounds.

Although counsel did not object on First Amendment grounds, such an objection would likely have been unsuccessful. The jury never heard testimony that appellant was actually a member of the Mormon faith. The complainant did not testify that appellant was a member of the Mormon faith. She testified that appellant's girlfriend practiced Mormonism, that appellant's girlfriend wanted the family to convert, and that appellant wished her to convert. This aligns with an affidavit submitted by one of appellant's long-time friends stating that appellant has "never been a Mormon."

Assuming the jury believed appellant practiced Mormonism, the Court of Criminal Appeals has observed that the First Amendment is not a *per se* barrier to the admission of evidence protected by it. *See Davis v. State*, 329 S.W.3d 798, 805

46

(Tex. Crim. App. 2010). Such evidence may be admissible if it is shown to be relevant to the issues involved in the case. *Id.* (citing *Dawson v. Delaware*, 503 U.S. 159, 161 (1992)). The record here indicates the trial court did not abuse its discretion in overruling counsel's evidentiary objection and finding the testimony relevant to the trial issues (*i.e.*, whether the complainant's allegations against appellant were credible). Thus, the First Amendment did not prohibit the trial court from admitting the evidence even if there was an objection by counsel on First Amendment grounds. *Id.*

Simply put, based on this record, the challenged acts and omissions of counsel did not constitute deficient performance. *See Prine*, 537 S.W.3d at 117 (counsel's performance is deficient if it falls below objective standard of reasonableness). Therefore, we hold appellant has failed to prove his ineffective assistance of counsel claim by a preponderance of the evidence and overrule his third and tenth issues.[8] *See Thompson*, 9 S.W.3d at 813 (failure to make showing of either deficient performance or sufficient prejudice defeats ineffectiveness claim).

### Cumulative Harm

Finally, in issue eleven, appellant asks this Court to overturn his conviction and grant him a new trial because the cumulative effect of the errors in his case

---

[8] Claims of ineffective assistance of counsel rejected on direct appeal "due to lack of adequate information may be reconsidered on an application for a writ of habeas corpus." *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011).

denied him of a fundamentally fair trial. While it is possible for several errors to be harmful in their cumulative effect, we found little or no error in appellant's case, and any errors we found were deemed harmless. We hold appellant's cumulative harm complaint lacks merit and overrule his eleventh issue. *See Buntion v. State*, 482 S.W.3d 58, 79 (Tex. Crim. App. 2016) (stating that "appellant has failed to prove error concerning each of these claims separately, and so we find no cumulative harm"); *Murphy v. State*, 112 S.W.3d 592, 607 (Tex. Crim. App. 2003) ("Because we have found little or no error in the above-alleged points, there is no harm or not enough to accumulate."); *Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999) ("It is conceivable that a number of errors may be found harmful in their cumulative effect," but "we are aware of no authority holding that non-errors may in their cumulative effect cause error."); *Schmidt v. State*, 612 S.W.3d 359, 372 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd) ("The cumulative-error doctrine does not apply unless the complained-of errors have been preserved for appeal and are actually errors.").

## Conclusion

Having overruled all eleven issues raised by appellant in his appeal, we affirm the trial court's judgment.

Amparo Monique Guerra
Justice

48

Panel consists of Justices Goodman, Guerra, and Gunn.

Do not publish. TEX. R. APP. P. 47.2(b).